IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK A. MEYER,                              Case No. 3:14-cv-01698-AA
                                                   OPINION AND ORDER
        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____

Lisa R.J. Porter
JP Law PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, Oregon 97035
    Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Diana Andsager
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Mark Meyer brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On May 26, 2010, plaintiff applied for DIB, alleging disability as of April 14, 2005. Tr. 18. On October 13, 2010, plaintiff's application was denied initially and on January 24, 2011, was denied upon reconsideration. Id. On March 14, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified. Subsequent to the hearing, plaintiff submitted additional medical evidence and a post-hearing brief by plaintiff's attorney, which were both added to the record. Interrogatory responses were then obtained from a vocational expert and were subsequently added to the record. Id. On March 21, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15. On September 2, 2014, the Appeals Council denied his request for review. Plaintiff then filed a complaint in this Court.

## STATEMENT OF FACTS

Born on March 14, 1960, plaintiff was forty-nine years old on the date he was last insured for DIB and fifty-two years old at the

time of the hearing. Tr. 18, 27. Plaintiff has at least a high school education and is able to communicate in English. Tr. 27. He was previously employed as a groundskeeper, a forklift operator, a warehouse worker, a shipping clerk, and a fabrication helper. Id. Plaintiff alleges disability due to chronic back pain, depression, anxiety, and post traumatic stress disorder ("PTSD"). Tr. 21, 263. The parties agree that plaintiff must establish disability as of December 31, 2009. Pl.'s Br. at 6.

## THE ALJ'S FINDINGS

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. At step one, the ALJ determined that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 20; <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that plaintiff has a "medically severe impairment or combination of impairments" through his date last insured ("DLI"), including degenerative disc disease of the cervical, lumbar, and thoracic spines. Tr. 20 The ALJ also found that plaintiff had no severe mental impairments between plaintiff's alleged onset date of disability and his DLI. Tr. 20; <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 23; <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d).

The ALJ evaluated that prior to his DLI, plaintiff had the residual functional capacity ("RFC") to perform a range of light work:

> [he] is able to lift 20 pounds occasionally and 10 pounds frequently. He could occasionally climb, balance, stoop,

Page 4 - OPINION AND ORDER

kneel, crouch, and crawl. He has to avoid concentrated exposure to hazards such as machinery and heights. Tr. 23.

At step four, the ALJ found that plaintiff could not perform his "past relevant work." Tr. 27; 20 C.F.R. § 404.1520(f).

At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national and local economy, including electronics worker and small products assembler. Tr. 28; Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). The ALJ therefore concluded that plaintiff was not disabled under the Act. Tr. 28-29.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding him not fully credible; (2) rejecting the lay testimony of his girlfriend, Barbara Anderson; (3) improperly assessing the medical opinion evidence from doctors Hung Nguyen, M.D., Susan Smith, M.D., and Ani Kapadia, M.D.; and (4) failing to account for all of his limitations in the RFC, thereby rendering the step five finding invalid.

I.   Plaintiff's Credibility

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the

Page 5 - OPINION AND ORDER

claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he was unable to work because, even after his most recent surgery in 2011, his pain progressed back to the level it was prior to the surgery. Tr. 45. Although Veteran Affairs ("VA") Dr. Cetas noted that after four weeks the plaintiff could return to work, plaintiff testified that he did not because of his increased pain. Tr. 45, 1714-1715. Plaintiff also testified that his everyday routine usually consisted of awaking late in the day, because of the medication he takes. Tr. 43. He also stated that once awake, it is a challenge to get out of bed, and he has to roll out of bed because of the pain. Id. He is usually home alone and uses a grabber to pick up things.

Id. He later clarified that he did not use things like a grabber until August 2011. Tr. 44.

Plaintiff further testified that he was too disabled to work because in 2008, "I started reliving what happened to me in my childhood. Seven of us – there were nine of us kids. Seven of us were assaulted and molested by my mom's boyfriend. I tried to keep it hidden, but it came out." Tr. 46. Plaintiff also endorsed problems with hallucinations: "[I]'ve got people talking to me in the house who know my name." Tr. 44. Plaintiff again clarified, in response to subsequent questions from his attorney, that his hallucinations did not start until the end of 2011. Tr. 44. Further, he reported trouble sitting for more than ten minutes at times. Tr. 45. Plaintiff stated that his girlfriend began doing all of the driving in 2010, because "a lot of times I can't keep a clear focus with my eyes." Tr. 45-46. Plaintiff stated he performs some household tasks with rest breaks; but even with accommodations he experienced severe pain. Tr. 49-50.

After summarizing plaintiff's hearing testimony and medical records, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible, due to his independent daily activities and social interaction that were inconsistent with his allegations of disabling functional limitations. Tr. 24.

Notably, the ALJ determined that evidence of plaintiff's numerous activities suggested a greater level of functioning than

Page 7 - OPINION AND ORDER

his alleged limitations. Tr. 21-22, 254, 285, 354, 462, 795, 863, 942, 963, 1019. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capabilities that are transferable to a work setting" Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(citations and internal punctuation omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113. In particular, the ALJ found "that plaintiff went to karaoke bars with his girlfriend, enjoyed working on computers, and worked on a neighbor's car in October 2008." Df.'s Br. at 6; Tr. 22, 254, 354, 462, 1019. Additionally, the ALJ noted that in July 2009, plaintiff reported that he served as an advocate for the Marine Corps League, aiding veterans and active Marines. Df.'s Br. at 6; Tr. 22, 942.

Further, the ALJ found that plaintiff's credibility was impaired by his other activities of daily living. The record reveals that plaintiff enjoys working with scroll saws and craft projects that involved woodworking. Df.'s Br. at 6; Tr. 22, 285. Plaintiff also reported that he took care of his house and yard, his car, and helped maintain his household and care for his niece's two young children, before and after his DLI. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tr. 22, 253, 353, 942. Moreover, plaintiff reported in 2010, that he did not leave his home due to

Page 8 - OPINION AND ORDER

financial concerns, rather than functional limitations. Tr. 22, 868. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also found that the medical evidence does not substantiate plaintiff's allegations of his disabling limitations. Tr. 24. Substantial evidence in the record supports the ALJ's conclusion. In particular, in August 2006, sixteen months after plaintiff's alleged disability onset date, objective examination findings revealed only "mild tenderness" in his back, negative straight leg tests, normal motor muscle strength, and intact neurological results. Tr. 24, 691-692. Plaintiff's treating VA physician Amar Bhuta, M.D., observed that plaintiff's gait was normal and that he demonstrated normal range of motion in all four extremities. Tr. 692-693. Additionally, Dr. Bhuta did not report that plaintiff needed or used a cane or other assistive device at this appointment. Tr. 691-693. In August 2008, plaintiff's treating VA physician Matthew Kaul, M.D., reported that plaintiff's bilateral lumbosacral screen was "normal" and that there was no evidence of radiculopathy on either side, despite plaintiff's complaints. Tr. 25, 1043.

The ALJ also noted that in February and April 2009, plaintiff again presented with normal gait and strength throughout his extremities. Tr. 25, 991, 1003. In June 2009, plaintiff's treating VA physician reported that he had normal motor examination findings

Page 9 - OPINION AND ORDER

and that plaintiff's complaints were not consistent with an MRI. In addition, after plaintiff's DLI, the ALJ noted that plaintiff's report of his symptoms were out of proportion with the examination findings. Tr. 25, 1610.

Furthermore, an ALJ may consider a claimant's non-prescribed or unwarranted use of an assistive device, such as a cane, to determine plaintiff's subjective expression of his limitations lacks credibility. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012). Plaintiff contends that he has been prescribed a walker by his physician. Pl.'s Br. at 9, 20. However, the record reflects that plaintiff consistently presented with a normal gait prior to his DLI. Thus, the ALJ's finding that plaintiff's alleged need for an assistive device, in the absence of a prescription further diminished his credibility, is supported by specific and legitimate findings. Tr. 25. Thus, the ALJ reasonably concluded that plaintiff's allegations were inconsistent with the longitudinal medical record rendering him not disabled.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding is affirmed.

II. Lay Witness Statements

Plaintiff also asserts that the ALJ neglected to provide a germane reason to reject the statements of his girlfriend, Ms. Anderson. Lay statements regarding a claimant's symptoms or how an impairment affects the claimant's ability to work is competent

Page 10 - OPINION AND ORDER

evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted). Nevertheless, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citations omitted).

In August 2010, Ms. Anderson completed a Third-Party Adult Function Report. Tr. 343-350. Ms. Anderson stated that plaintiff engaged in limited housework, yard work, and shopping, used a computer and went to karaoke on Friday nights. Tr. 345-347. She nonetheless reported that plaintiff "lives in so much pain..." and "sometimes [follows instructions] all the way, sometimes not," "doesn't handle stress well" and "is having really bad dreams that are causing him to be afraid in the daytime." Tr. 343, 348-349.

The ALJ discredited Ms. Anderson's third-party statements because her "assessment of plaintiff's symptoms, dated after his DLI, was similar to plaintiff's allegations of severe pain and debilitating functional limitations." Tr. 24, 343-350, 351-358. The ALJ also found that prior to his DLI "Ms. Anderson and plaintiff did numerous activities together. In particular, Ms. Anderson drove with plaintiff down the Oregon Coast, plaintiff went to karaoke bars, cared for two young children, and provided computer assistance to Ms. Anderson's cousin." Tr. 21-22, 254, 462, 795,

Page 11 - OPINION AND ORDER

863, 963. In addition, the ALJ found that "Ms. Anderson's assessment was similar to plaintiff's symptom allegations, which were not credible." Tr. 24-26, 343-350.

Lay witness testimony may be disregarded on the same basis as claimant's discredited subjective reports. <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009). Further, nothing precludes an ALJ from considering the close relationship between a lay witness and a claimant when evaluating credibility. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006).

In this case, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to Ms. Anderson. Plaintiff's activities of daily living and social activities support the ALJ's credibility finding with respect to plaintiff's and his girlfriend's statements. <u>See</u> <u>Molina</u>, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). Therefore, the ALJ's decision is upheld as to this issue.

III. <u>Medical Opinion Evidence</u>

Plaintiff next argues that the ALJ should have given more weight to the March 2008 opinion of treating physician Hung Nguyen, M.D., the July 2010 opinion of Susan Smith, M.D., and the June 2011 opinion of Ani Kapadia, M.D.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss</u>, 427 F.3d at 1216 (citing <u>Lester</u>, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id.</u> An ALJ gives specific, legitimate reasons to discount contradicted opinions by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, "credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." <u>Webb v. Barnhart</u>, 433 F.3d 683, 688 (9th Cir. 2005).

A. <u>Dr. Nguyen's Opinion</u>

In March 2008, Dr. Nguyen wrote a work-release statement based on plaintiff's medical records and Dr. Nguyen's own examinations of plaintiff. Tr. 625-631. Dr. Nguyen stated that plaintiff was "unable to work at this time due to the exacerbation of low back pain." Tr. 26, 625.

The ALJ extensively evaluated the medical evidence of the entire record, including the specific opinion by Dr. Nguyen, and ultimately found that this "opinion was not consistent with

Page 13 - OPINION AND ORDER

plaintiff's routine treatment records that revealed normal gait and station, normal strength, and unremarkable objective test results." Tr. 26, 462-463, 644, 718, 793, 991, 1003, 1043. Namely, the ALJ afforded less weight to Dr. Nguyen's opinion because: (1) a contemporaneous VA record revealed that plaintiff's lower extremity motor strength was grossly intact, and treating VA physician, Edmund Frank, M.D., recommended conservative treatment of physical therapy; (2) plaintiff's independent daily activities prior to his DLI, were inconsistent with Dr. Nguyen's opinion; and (3) Dr. Nguyen's opinion was based, at least in part, on plaintiff's self-report which was not entirely credible. Tr. 25-26, 254, 260, 285, 462, 623, 795, 863, 942, 963, 1019.

It is well-established that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotations marks omitted). "[A]n opinion of disability premised to a large extent upon the claimant's own accounts of [his] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation, unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's opinion).

The record demonstrates that Dr. Nguyen based his opinion, at least in part, on plaintiff's uncredible subjective symptom

statements. Tr. 625-631. However, the ALJ found that plaintiff's subjective symptom statements and Dr. Nguyen's opinion contradicted other physicians' reports around the same time. For example, in February 2008, plaintiff went to the emergency room for back pain, but his examination revealed only minimal back swelling, a negative straight leg raise test, and that he was able to walk without difficulty. Tr. 25. Additionally, in March 2008, Dr. Frank, a staff physician in neurosurgery, reported that plaintiff's lower extremity motor strength was mostly intact and that an MRI revealed moderate degenerative disc disease, but there was no major cauda equine compression. Tr. 25, 623-624. Indeed, Dr. Nguyen acknowledged plaintiff's self-reports in his March 2008 opinion. Tr. 26. As such, the ALJ provided legally sufficient reasons, supported by substantial evidence, to give little weight to the opinion of Dr. Nguyen. Thus, the ALJ's evaluation of Dr. Nguyen's opinion is therefore affirmed.

    B.   <u>Dr. Smith's Opinion</u>

In July 2010, Dr. Smith filled out a "Mental Impairment Questionnaire" given to her by plaintiff's attorney to assess plaintiff's mental capacity. Tr. 1089-1096. Dr. Smith's assessment was based on eight visits with plaintiff in the clinic and four phone calls with plaintiff. <u>Id.</u> Dr. Smith found that plaintiff had a severe mental health condition with "marked" limitations in social and cognitive functioning. Tr. 26, 1090-1092, 1094-1096.

The ALJ gave reduced weight to the mental functional assessment of Dr. Smith for many reasons, including: (1) Dr.

Page 15 - OPINION AND ORDER

Smith's admitted reliance, at least in part, on the subjective statements of plaintiff; (2) Dr. Smith's opinion of such severe limitations was not consistent with plaintiff's longitudinal treatment records and daily activities; and (3) Dr. Smith's global assessment of functioning (GAF) score of 45 was not consistent with plaintiff's March 2010 and April 2010 mental status examinations and the GAF score of 65 Dr. Smith assessed four months earlier in March 2010. Tr. 22, 24-26, 254, 260, 285, 462, 795-796, 812, 814-815, 863, 942, 963, 1019, 1092-1093, 1095. Additionally, as noted by the defendant, the ALJ did not find that plaintiff had a severe mental impairment and plaintiff did not challenge the ALJ's finding at step two regarding his alleged mental impairment. See Bray, 554 F.3d at 1226 n.7.

As discussed above, an ALJ may reject a medical opinion that is based on a claimant's discredited self-reports. Andrews, 53 F.3d at 1043; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the rejection of a treating source's opinion that "relied only on [the claimant's] subjective complaints"); see also Bray, 554 F.3d at 1228. Moreover, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, Dr. Smith's assessment was based in part on plaintiff's subjective statements. For instance, in response to the question "does the psychiatric condition exacerbate your patient's

Page 16 - OPINION AND ORDER

experience of pain or any other physical symptoms," Dr. Smith wrote "[plaintiff] reports that when under more stress and more anxious and depressed that headaches and back pain worsen." Tr. 1093. Dr. Smith also utilized the phrases to answer the questionnaire "plaintiff reports or per plaintiff's report" a few times throughout her report, nonetheless overall relying in part on plaintiff's self-reported symptoms to her, to fill out the questionnaire. Tr. 1092-1093, 1095. Accordingly, the ALJ reasonably disregarded Dr. Smith's opinion to the extent it was premised on plaintiff's self-reports. Further, the ALJ rationally found that Dr. Smith's opinion conflicted with other medical evidence in the record. Thus, the ALJ's evaluation of Dr. Smith's opinion is therefore affirmed.

    C.    <u>Dr. Kapadia's Opinion</u>

In June 2011, Dr. Kapadia filled out a form regarding plaintiff's ability to do "Work-Related Activities;" the form was given to her by plaintiff's attorney to assess plaintiff's work-related capabilities. Tr. 1089-1096. Dr. Kapadia became plaintiff's primary care physician in February 2011 and thus, did not treat plaintiff until more than a year after his DLI. Tr. 26, 1652; Df.'s Br. at 10. Dr. Kapadia based her assessment on plaintiff's past MRIs and past medication history. Tr. 1652, 1655; Pl.'s Br. at 28. Dr. Kapadia also described her own observations that plaintiff can only sit or walk for a short period of time and that plaintiff's foot drags when he walks. Tr. 1654.

Page 17 - OPINION AND ORDER

The ALJ gave reduced weight to Dr. Kapadia's June 2011 opinion because she did not start treating plaintiff until 2011, such that "any information about plaintiff's functional limitations due to pain during the relevant period must have come from plaintiff, and the ALJ reasonably found his symptom allegations not credible." Tr. 22, 24-26, 1652-1653, 1655-1657. As discussed above, an ALJ may reject a medical opinion that is based on a claimant's discredited self-reports. <u>Andrews</u>, 53 F.3d at 1043; <u>see also</u> <u>Bray</u>, 554 F.3d at 1228.

Here, Dr. Kapadia's assessment was based in part on plaintiff's subjective statements, which the ALJ reasonably concluded were not credible. Additionally, the ALJ did not err in concluding that Dr. Kapadia's assessment was not relevant to the period of alleged disability. Tr. 26; Pl.'s Br. at 11. Accordingly, the ALJ did not err in rejecting Dr. Kapadia's opinion.

Essentially, as the defendant notes, the reduced weight given to the three medical opinions discussed above were supported by several specific and legitimate reasons, based on substantial evidence in the record. After reviewing the record, the Court cannot conclude that the ALJ acted unreasonably in finding that the above medical opinions should be given reduced weight. For the reasons stated above, the ALJ's assessment of the medical opinion evidence is upheld.

IV. <u>RFC Assessment and Step Five Findings</u>

Finally, plaintiff argues that the ALJ's RFC and step five findings are erroneous because they do not account for the

Page 18 - OPINION AND ORDER

functional limitations described in his testimony and the third-party statements by his girlfriend, as well as in the medical opinion evidence furnished by Drs. Nguyen, Smith, and Kapadia.

A claimant's RFC is the maximum activity a claimant can do despite his limitations. See 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the ALJ did not err in rejecting or giving less weight to the statements of plaintiff, Ms. Anderson, Dr. Nguyen, Dr. Smith, and Dr. Kapadia. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F.3d at 1217-18; Stubbs-Danielson, 539 F.3d at 1175-76. The ALJ's RFC and step five finding are upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 10th day of September, 2015.

_____
　　　　Ann Aiken
United States District Judge